**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| NICHOLAS ARTHUR OLIVERIO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01630-TWP-MJD |
| | ) | |
| BUTLER UNIVERSITY, | ) | |
| BUTLER UNIVERSITY POLICE | ) | |
| DEPARTMENT, ANTHONY RIVERA, | ) | |
| MARK CRAWN, SHAWN BARKS, and | ) | |
| BUTLER UNIVERSITY POLICE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendants Butler University, Butler University Police Department, Anthony Rivera, Mark Crawn, Shawn Barks, and Butler University Police Officers (collectively, "Defendants") (Filing No. 50). Following his arrest and dismissal of a case for battery against his girlfriend, Plaintiff Nicholas A. Oliverio ("Oliverio") filed this action asserting a violation of his Fourth Amendment rights under 42 U.S.C. § 1983 and state law claims of false arrest, battery, and intentional infliction of emotional distress. The Defendants filed a Motion for Summary Judgment, asserting that probable cause existed for the arrest and qualified immunity applies thereby entitling them to summary judgment. For the following reasons, the Defendants' Motion is granted.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Oliverio as the non-

moving party.  *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

At the time relevant to the incident giving rise to this case, Oliverio was a Butler University student.  His girlfriend, Kathryn Voelker ("Voelker"), was also a Butler University student.  Defendant Officers Rivera, Crawn, and Barks were employed as law enforcement officers with the Butler University Police Department.

Just before midnight on April 18, 2015, Oliverio and Voelker attended a house party near Butler University's campus.  Before going to the party, Oliverio consumed one beer at home.  Thereafter, he and Voelker walked about one mile to a house party.  While at the party, Oliverio and Voelker each had one alcoholic beverage (Filing No. 52-1 at 5–6).  They were in the basement at the house party, and Voelker was texting on her cell phone.  She used her cell phone for about five to ten minutes, when Oliverio told Voelker, "two, maybe three times," to put the cell phone away *Id.* at 10.  Oliverio was frustrated that his girlfriend was distracted by her cell phone.  Voelker eventually put her cell phone away, but she was upset that Oliverio asked her to put it away, so she went upstairs and onto the porch of the house.  Oliverio followed her out to the porch to talk about the situation. They talked for a few minutes while standing on the porch.  Neither Oliverio nor Voelker raised their voices while in the basement or on the porch.  *Id.* at 7–12.

By the time they went onto the porch, it was the early morning hours of April 19, 2015.  Voelker did not want to talk about the cell phone incident anymore, so she walked away, but Oliverio followed behind her down the street.  *Id.* at 12.  Oliverio was frustrated that Voelker could not understand that he wanted to be out together without being distracted by their cell phones.  While following behind Voelker, Oliverio stopped walking for a moment to "take a deep breath" because he was getting more frustrated about her not understanding.  Then he ran up to Voelker,

asked her to stop, and grabbed her hand or wrist. Voelker quickly turned around and stopped walking when Oliverio grabbed her hand and asked her to stop, and she shouted, "What." *Id.* at 13–15. Oliverio put his hands in the air, indicating that Voelker should stop and again asked her to stop. Oliverio did not, at this point, touch Voelker, but his hands were within inches of Voelker's chest. ([Filing No. 52-2 at 2](#)).

Around this time, Officer Rivera and his former colleague, off-duty Indianapolis Metropolitan Police Department ("IMPD") Officer Vincent Marshall, were patrolling the area by foot. They overheard an argument between a male and female nearby and followed the sound of the argument to investigate its source. As the officers got closer to the source of the argument, they turned down a street and observed Oliverio and Voelker at a nearby intersection that was illuminated by a streetlight ([Filing No. 52-3 at 3](#)–4, 6; [Filing No. 52-5 at 3](#)–4). As the officers approached Oliverio and Voelker, both Officer Rivera and Officer Marshall believe they saw Oliverio strike Voelker in the chest with an open hand causing her body to arch backward. Because of this, Officer Rivera immediately instructed Oliverio to put his hands behind his back, which he did without incident. Officer Rivera then handcuffed Oliverio without being physically rough ([Filing No. 52-1 at 16](#)–17; [Filing No. 52-4 at 2](#); [Filing No. 52-5 at 3](#)–4).

Voelker informed the officers that Oliverio had not done anything wrong and asked why they were arresting him. Officer Rivera explained that Oliverio was being arrested for battery, which he had just witnessed. Voelker explained that Oliverio had not battered her, that she understood what battery was, and that it had not happened. Voelker pleaded with Officer Rivera to not arrest Oliverio since he had not committed a battery against her. Officer Rivera explained to Voelker that he already called in the incident and requested a police vehicle, so it did not matter what she thought about the incident. They waited for approximately ten minutes for a police

vehicle to arrive to transport Oliverio.  During the wait, Voelker explained that Oliverio had done nothing wrong and should be released.  Voelker also "came out and said that she cheated" on Oliverio as an explanation of what they were arguing about; however, this was not true (Filing No. 52-1 at 15).  When the police vehicle arrived, Voelker again asserted that Oliverio should not be arrested and asked that she be permitted to go with him.  The officers denied the request, and when Voelker persisted in her request to go with Oliverio, Officer Marshall suggested that they could arrest her for public intoxication if she really wanted to go with Oliverio (Filing No. 52-1 at 15; Filing No. 63 at 26, 28–29).

Voelker explained to the officers that they were making a mistake and told them Oliverio was training for the Navy SEALS program.  Officer Marshall told Oliverio that he "wasn't man enough and mentally ready" for the SEALS.  Then one of the officers said to Voelker, "Do you know how hard it is to get into the Navy Seals?  They drop like flies.  If he goes in there with an attitude like the one he showed you, he won't last."  Officer Marshall then stated that Oliverio had choked Voelker, which drew an immediate response from Oliverio that he had not choked her.  Voelker also denied that she had been choked (Filing No. 63 at 14, 16, 26, 28–29).

Oliverio was transported from the arrest location to the Butler University police station by Officer Crawn.  Oliverio acknowledged that there was no physical roughness when he was put in the police vehicle, and he did not sustain any injuries during his transport to the Butler University police station.  Once at the station, Oliverio was placed in a holding cell while awaiting transfer to the Marion County arrestee processing center, and Officer Rivera completed the arrest paperwork. Oliverio waited in the holding cell for a couple of hours until IMPD transported him to the Marion County arrestee processing center (Filing No. 52-4 at 2; Filing No. 52-1 at 16–20).

Voelker went to the Butler University Police Department the next day at 7:00 p.m. to talk to Officer Rivera about Oliverio's arrest. Voelker explains that, during this conversation, Officer Rivera told her that he heard Oliverio and Voelker arguing about a phone and then saw Oliverio grab her arm and then her neck or chest. Voelker responded to Officer Rivera that Oliverio had grabbed her hand to get her to stop walking away and to talk. In response, Officer Rivera explained that, because he saw a man put his hands on a woman, he had to report Oliverio, and if he had not filed a report and Voelker did file a report, then he would be in trouble and his job could be in jeopardy (Filing No. 63 at 29–30).

Oliverio was in custody for approximately thirty-three hours. He was charged with battery and released. The Marion County Prosecutor's office declined to prosecute the matter, and the criminal case was dismissed on May 7, 2015 (Filing No. 63 at 18; Filing No. 64 at 8–9).

Officer Barks had no involvement with Oliverio's arrest other than approving Officer Rivera's computer-generated report after the arrest. Officer Crawn had no involvement with Oliverio's arrest other than transporting Oliverio to the Butler University police station, which Oliverio admits involved no physical roughness or injury (Filing No. 52-3 at 7–9; Filing No. 52-1 at 16–17).

Butler University investigated the incident, and on May 5, 2015, Butler University required Oliverio to attend a meeting with its Associate Director of Student Affairs, Martha Dziwlik ("Dziwlik"). This meeting was held only hours before Oliverio was scheduled to take a final exam. The meeting lasted approximately an hour and a half. Oliverio protested the timing of the meeting, but Dziwlik insisted it continue. On June 2, 2015, Dziwlik determined there was insufficient evidence to support the allegations and found that Oliverio had not violated Butler University

policies. Dziwlik also explained that she believed Oliverio had an "argumentative temper" and recommended he seek counseling (Filing No. 63 at 21–22; Filing No. 64 at 10).

On September 23, 2015, Oliverio filed this lawsuit against Butler University and its police officers in state court. He brought claims for false arrest, battery, and intentional infliction of emotional distress under state law and for violation of his Fourth Amendment rights under 42 U.S.C. § 1983. The Defendants then removed the action to this Court on October 15, 2015. On September 7, 2016, the Defendants filed their Motion for Summary Judgment.

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing

party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

## III.  DISCUSSION

The Defendants request summary judgment on each of Oliverio's claims on the bases that probable cause existed for Oliverio's arrest, qualified immunity protects Officer Rivera, Butler University does not have an unconstitutional policy or procedure that caused Oliverio's alleged injury, and Officers Crawn and Barks had no involvement in Oliverio's arrest. The Court will address each contention in turn.

### A.  Probable Cause

The primary argument advanced by the Defendants is that probable cause supported Oliverio's arrest, and thus, summary judgment is proper. The Defendants acknowledge that 42 U.S.C. § 1983 provides recourse for individuals who have experienced a violation of constitutional rights at the hands of state actors. The Defendants note that Oliverio has asserted a claim for violation of his Fourth Amendment rights when he was arrested allegedly without probable cause. But the Defendants assert that the undisputed evidence shows that Officer Rivera had probable cause to arrest Oliverio when he believed he witnessed Oliverio commit battery on Voelker in the presence of a police officer on April 19, 2015.

The Defendants explain that "police have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy

information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 433 (7th Cir. 1993) (citations and quotation marks omitted). As the Defendants explain, probable cause for an arrest is an objective standard with a subjective component because it requires that a reasonable officer in the same situation would believe the person arrested committed the offense. Thus, if a reasonable officer under the same circumstances would believe a crime was committed, the arrest is lawful even if the belief was mistaken and a crime had not actually been committed. *Id.* at 436.

Looking to the circumstances of this case, the Defendants assert that an officer in Officer Rivera's position would reasonably believe Oliverio committed a battery upon Voelker. While on foot patrol in the area of a house party, Officer Rivera and Officer Marshall overheard Oliverio and Voelker having an argument, so they followed the sound to investigate its source. When the officers turned down a street, they noticed Oliverio and Voelker at a nearby intersection that was illuminated by a streetlight. As the officers approached Oliverio and Voelker, Officer Rivera and Officer Marshall believe they saw Oliverio strike Voelker in the chest with an open hand causing her body to arch backward. Both Officer Rivera and Officer Marshall believe they witnessed the same event and came to the same conclusion—that Oliverio committed battery on Voelker.

The Defendants also argue that the undisputed evidence shows Oliverio "admits he chased after Voelker several times when she tried to walk away and grabbed her hand, which caused her to whip around to face him." (Filing No. 51 at 8.) However, the designated evidence shows that this information was not within the officers' knowledge at the time of the arrest. Thus, this information cannot support probable cause.

The Defendants summarize that, based on the totality of the circumstances (overhearing the couple's argument, observing Oliverio's hands within inches of Voelker's body, and observing

Voelker's subsequent body movements), a reasonable officer in Officer Rivera's position would have believed Oliverio committed battery, giving rise to probable cause and justifying his arrest. They assert that whether Oliverio actually did strike Voelker is irrelevant because Officer Rivera honestly believed he witnessed Oliverio strike Voelker, and the probable cause determination allows some room for reasonable mistakes.

Responding to the Defendants' argument about probable cause, Oliverio asserts that the question of probable cause must be answered by the jury "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," quoting *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008). Oliverio summarizes the facts and holding in the *Chelios* case and then points out the similarities to his case. Oliverio explains that there is a dispute about whether he actually struck Voelker, which forms the basis for his arrest. Then he asserts that based on the summary judgment standard, construing the facts in his favor, "no touching of Voelker's chest occurred, meaning no battery occurred, and therefore no probable cause existed permitting Officer Rivera to arrest Oliverio." (Filing No. 62 at 8.) However, this argument ignores case law, which allows for reasonable mistakes when police assess probable cause.

Oliverio further argues that even if Officer Rivera was mistaken in what he thought he saw, he was under an obligation to consider exculpatory facts that cast doubt on his initial probable cause determination. Oliverio cites a number of cases to support this argument. *See, e.g.*, *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1016 (7th Cir. 2006) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest."); *Overton v. Hicks*, 2008 U.S. Dist. LEXIS 47186, at *31–32 (S.D. Ind. 2008) ("summary judgment denied because a jury could find the officer was aware of facts negating criminal intent, and "these new facts required [the officer] to reevaluate the reasonableness of his initial probable cause

determination"); *Fitzpatrick v. City of Fort Wayne*, 2009 U.S. Dist. LEXIS 22483, at *21 (N.D. Ind. 2009) ("The determination of probable cause involves an examination of all the circumstances known to the officer at the time of the arrest . . . *including exculpatory information*.").

Pointing to the facts of this case, Oliverio explains that Voelker pleaded with Officer Rivera at the arrest scene that he was wrong; that she did not feel threatened, harmed, or scared; that she knew what battery was; and that Oliverio had not committed a battery against her. Thus, Oliverio asserts, Officer Rivera was required to reconsider his already made probable cause determination as he received this exculpatory information from Voelker. "Officer Rivera failed to do so, not by just closing his eyes to facts that would help clarify the circumstances, but by defiantly stapling them shut because he had 'already called it in.'" (Filing No. 62 at 11 (citations omitted).) As a result, Oliverio argues, a genuine dispute exists regarding whether probable cause existed at the time of the arrest because of Officer Rivera's refusal to consider Voelker's exculpatory information and reassess probable cause.

The Defendants reply to Oliverio's argument by asserting that "once police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in hopes of uncovering potentially exculpatory evidence." *Forman v. Richmond Police Dep't*, 104 F.3d 950, 962 (7th Cir. 1997). Furthermore, the probable cause determination is an inquiry as to "whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998).

The Defendants assert that, at the time of Oliverio's arrest, Officer Rivera had sufficient facts to establish probable cause and did not need to conduct further investigation about the perceived battery. The Defendants argue the Voelker's statements to Officer Rivera are immaterial

because she told the officers that she did not feel threatened or harmed after the arrest had occurred. They explain that it was not within Officer Rivera's discretion to ignore a crime that he had witnessed, and had he turned a blind eye to what he had witnessed, he not only would have neglected his duty as a police officer but would have risked Voelker later being seriously battered or even killed by Oliverio. The Defendants assert that Officer Rivera had no choice but to arrest Oliverio for battery, and any information from Voelker after the arrest denying that she felt harmed or threatened has no bearing on whether probable cause existed at the time of the arrest.

In making a determination regarding the existence of probable cause on a motion for summary judgment, the Court notes,

> If the underlying facts supporting the probable cause determination are not in dispute, the court can decide whether probable cause exists. . . . [However], if the question of probable cause arises in a damages suit, it is a proper issue for the jury if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them. Accordingly, a conclusion that probable cause existed as a matter of law is appropriate only when no reasonable jury could find that the officers did not have probable cause to arrest [the plaintiff].

*Maxwell*, 998 F.2d at 434 (citations omitted).

The Court additionally notes that "police officers have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established . . . . They may simply arrest the accused suspect." *Mustafa v. City of Chi.*, 442 F.3d 544, 548 (7th Cir. 2006) (citation omitted). However, "[a] police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest." *Sornberger*, 434 F.3d at 1016 (citation and quotation marks omitted).

Concerning the issues of "no duty to further investigate" but "a duty to consider all known facts including exculpatory information," the Court finds instructive the case of *Fitzpatrick v. City*

*of Fort Wayne*. In reaching its decision that summary judgment was not warranted, the court explained,

> Moreover, and significantly, there is a material issue of fact bearing upon Officer Lemon's knowledge prior to the arrest. According to E.J., he told Officer Lemon that D.F. actually had his arms out to keep the boys away from him, essentially exculpating D.F. A reasonable fact finder could therefore conclude that Officer Lemon arrested D.F. even after learning information from the victim that eliminated D.F. as a suspect. The determination of probable cause involves an examination of all the circumstances known to the officer at the time of the arrest[,] *including exculpatory information*. A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.

> In viewing the facts in the light most favorable to D.F., the circumstances within Officer Lemon's knowledge were that D.F. was merely present in the hallway, that he briefly entered the bathroom during the attack, and that D.F. held out his arms as if to restrain a couple of the attackers. Thus, a reasonable jury could conclude that Officer Lemon lacked probable cause to arrest D.F. for any of the crimes eventually lodged against him.

*Fitzpatrick*, 2009 U.S. Dist. LEXIS 22483, at *20–22 (citations and quotation marks omitted).

The facts of this case are distinguished from those in *Fitzpatrick*. Unlike the officers in *Fitzpatrick* who relied on statements from various witnesses and did not personally witness what they mistakenly believed to be a battery, the designated evidence makes clear that both officers in this case honestly believed they saw Oliverio strike Voelker with an open hand. Although Voelker explained to the officers at the time of Oliverio's arrest that she had not been battered by Oliverio, she also falsely told the officers that they had been arguing because she cheated on Oliverio. The officers had no duty to further investigate, and it was reasonable for them to proceed with an arrest based upon what they honestly believed they had personally witnessed. As noted previously, police have probable cause to arrest an individual when the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. Under the circumstances of this case, it was reasonable for Officer Rivera to ignore the exculpatory

information provided by Voelker in light of the fact that he personally witnessed what he honestly believed (although mistakenly) to be a battery.

Based on the factual circumstances and the designated evidence in this case, the Court determines that the officers are entitled to summary judgment because they reasonably believed probable cause existed for the arrest.

## B.       Qualified Immunity

The Defendants also assert that Officer Rivera is entitled to qualified immunity because he had probable cause to arrest Oliverio. Qualified immunity provides a defense so that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The Fourth Amendment right to be free from arrest without probable cause was clearly established at the time of Oliverio's arrest. *See, e.g.*, *Driebel v. City of Milwaukee*, 298 F.3d 622, 652 (7th Cir. 2002) ("innumerable decisions . . . have clearly established the right to be free from arrest without probable cause"); *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) ("when the false arrest occurred the constitutional right not to be arrested without probable cause was well established"); *McCann v. Hood*, 2009 U.S. Dist. LEXIS 8645, at *22 (S.D. Ind. 2009) ("it was clearly established, at the time that she was arrested, that arrest without probable cause violates the Fourth Amendment").

The Defendants' argument centers on their assertion that Officer Rivera had probable cause to arrest Oliverio. They also explain that qualified immunity protects officers who make a reasonable error in determining whether there is probable cause to arrest an individual. *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) ("The defense provides ample room for mistaken

judgments and protects all but the plainly incompetent and those who knowingly violate the law."). The defense "applies not only to those officials who correctly determine that probable cause to arrest exists, but also to those government officials who reasonably but mistakenly conclude that it does." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999).

Oliverio briefly responds to the qualified immunity defense, asserting that "Officer Rivera may not shield himself from liability for his unlawful conduct by invoking qualified immunity because Oliverio has a constitutional right to be free from unreasonable seizure and said right was clearly established at the time of the deprivation." (Filing No. 62 at 8.)

Consistent with the Court's discussion above regarding probable cause, the Court determines that Officer Rivera is entitled to qualified immunity because the designated evidence shows Officer Rivera made a reasonable mistake in judgment regarding the occurrence of an actual battery, but probable cause for the arrest existed. Therefore, summary judgment is appropriate on the basis of qualified immunity.

## C.    Section 1983 Claim Against Butler University

The Defendants next argue that Butler University is entitled to summary judgment on the Section 1983 claim because vicarious liability under a theory of *respondeat superior* is not a recognized cause of action under Section 1983, and Butler University has no unconstitutional policy or procedure that caused Oliverio's alleged injury. *See Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) ("just as a municipal corporation is not vicariously liable upon a theory of *respondeat superior* for the constitutional torts of its employees, . . . a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights"); *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) ("a private corporation

cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself").

An unconstitutional custom or policy can be shown by:

> (1) An express policy that, when enforced, causes constitutional deprivation; (2) a widespread practice that, although not authorized by written or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

*Mayes v. City of Hammond*, 442 F. Supp. 2d 587, 641–42 (N.D. Ind. 2006) (citing *Valentine v. City of Chicago*, 452 F.3d 670 (7th Cir. 2006)).

The Defendants explain that liability can only be imputed against Butler University if it had an unconstitutional policy or custom that caused the alleged Fourth Amendment violation. Pointing to Oliverio's statement of claims, the Defendants note that Oliverio contends Butler University has a "custom or policy of failing to train its officers on proper procedures for determining probable cause, along with its policy of directing its officers to automatically arrest males for touching females." (Filing No. 51 at 10, quoting Filing No. 49 at 4–5.) The Defendants then assert,

> Plaintiff's mere argument, completely unsupported by any admissible evidence that such purported policies exist is insufficient to preclude summary judgment on Plaintiff's § 1983 claim against Butler University. Without evidence of an unconstitutional custom or policy that caused Plaintiff's alleged constitutional harm, Plaintiff's § 1983 claim against Butler University fails as a matter of law.

(Filing No. 51 at 10).

Responding to the Defendants' argument, Oliverio asserts that he has presented evidence of Butler University's policy or custom of arresting males for allegedly committing battery against females despite a lack of probable cause. He explains that Officer Rivera told Voelker the day after the incident that he had to report Oliverio because "he saw a man put his hands on a woman."

(Filing No. 63 at 30.)  Officer Rivera stated that he "would be in big trouble and it could jeopardize his job" if he did not report Oliverio.  *Id.*  Oliverio argues that these statements by Officer Rivera are evidence of Butler University's "widespread practice of arresting citizens without probable cause, specifically males who have touched females, regardless of whether probable cause existed for such arrest."  (Filing No. 62 at 13.)

Oliverio also argues that Butler University's sanction of Officer Rivera for failing to increase arrests provides further evidence of a custom or policy of arresting citizens without probable cause.  He explains that in 2012 Butler University conducted a "performance evaluation summary" of Officer Rivera and stated, "One of his goals was to increase ticket production on his shift however overall production fell 48.6% and he failed to issue a citation for either 2010 or 2011." (Filing No. 64 at 12.)  Oliverio asserts that Butler University's pressure on Officer Rivera to issue citations continued into 2013 when he was again sanctioned for not meeting Butler University's quota, pointing to Filing No. 64 at 14–15.

Thus, Oliverio argues, Butler University's sanctions against Officer Rivera for failing to increase ticket production along with Officer Rivera's statements to Voelker that he had to report Oliverio or jeopardize his job provide evidence of a Butler University policy or custom of arresting citizens without probable cause.  Further, this custom or policy of Butler University caused Officer Rivera to arrest Oliverio without probable cause.

The Defendants reply that Oliverio has provided no evidence of an unconstitutional policy or custom under any of the three methods established in *Valentine v. City of Chicago*.  Rather, Oliverio only argues that it was Butler University's policy to condone arrests without probable cause without pointing to any evidence of such an expressed policy or practice.  Oliverio does not argue that his constitutional injury was caused by a person with final policymaking authority

because there is no evidence that Officer Rivera has any policymaking authority. The only evidence that Oliverio designates is Butler University's quota requirement for its police officers to issue parking citations and tickets, which is not relevant to this case because Oliverio was arrested for battery and was not issued a parking ticket or citation. The Defendants assert that, without evidence of an unconstitutional custom or policy that caused Oliverio's constitutional injury, Oliverio's Section 1983 claim against Butler University fails as a matter of law.

The designated evidence presented by Oliverio fails to show any "permanent and well-settled widespread practice" by Butler University of arresting citizens without probable cause, even in the case of males who have touched females. The isolated statement by Officer Rivera that he felt like he had to report Oliverio when he "saw a man put his hands on a woman," or otherwise he "would be in big trouble and it could jeopardize his job," does not establish a widespread practice. Oliverio does not point to any other similar incidents.

Additionally, Oliverio's reference to parking ticket quotas and Officer Rivera's "sanctions" are equally unhelpful to establish an unconstitutional policy or custom. As the Defendants point out, parking ticket quotas are irrelevant to this case and are not analogous to battery charges. Furthermore, the "performance evaluation summaries" that Oliverio designated to show that Officer Rivera had been sanctioned do not actually sanction Officer Rivera. Rather, the evaluation summaries note that Officer Rivera "is a solid supervisor and an asset to the department. His officers run hot & cold on traffic & citations." (Filing No. 64 at 14.)

Because the designated evidence does not support the existence of an unconstitutional policy or custom that caused Oliverio's constitutional injury, Butler University cannot be liable under Section 1983 for Oliverio's arrest. Therefore, Butler University is entitled to summary judgment on Oliverio's Section 1983 claim.

**D.** **Claims Against Officers Crawn and Barks**

"[Section] 1983 liability is premised on the wrongdoer's personal responsibility. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Kuhn v. Goodlow*, 678 F.3d 552, 555–56 (7th Cir. 2012) (citation and quotation marks omitted) (emphasis in original).

The Defendants assert that no evidence suggests that Officers Crawn or Barks personally contributed to any constitutional deprivation alleged by Oliverio that could serve as a predicate for imputing liability under Section 1983. The Defendants explain that Officer Barks had no interaction with Oliverio; he simply was the supervisor who approved Officer Rivera's computer-generated report after the arrest. Regarding Officer Crawn, he arrived at the arrest location after the arrest and simply transported Oliverio to the Butler University police station.

Oliverio does not offer any evidence or argument to contradict the evidence and argument of the Defendants regarding Officers Barks' and Crawn's lack of involvement in Oliverio's arrest, constitutional injury, or any other harm. In fact, Oliverio does not even mention Officers Barks and Crawn in his response brief. Additionally, Oliverio does not assert any claims against Officers Barks and Crawn in his "Statement of Claims" and does not even mention them in the statement (*see* Filing No. 49).

The designated evidence shows that Officer Barks had no involvement with Oliverio's arrest other than approving Officer Rivera's computer-generated report after the arrest. Officer Crawn had no involvement with Oliverio's arrest other than transporting Oliverio to the Butler University police station, which Oliverio admits involved no physical roughness or injury (Filing No. 52-3 at 7–9; Filing No. 52-1 at 16–17). Therefore, the Court determines that summary judgment is appropriate as to all claims asserted against Officer Crawn and Officer Barks.

**E.      State Law Claims**

Lastly, the Defendants assert that they are entitled to summary judgment on Oliverio's state law claims of false arrest/false imprisonment, battery, and intentional infliction of emotional distress. The Court will address each claim separately.

**1.      False Arrest/False Imprisonment Claim**

The Defendants' entire argument regarding the false arrest claim is as follows:

> False imprisonment has been defined as an "unlawful restrain upon one's freedom of locomotion or the deprivation of liberty without his consent." *Brickman v. Robinson Bros. Dept. Store,* 202 N.E.2d 583, 586 (Ind. App. 1964). A defendant may be liable for false imprisonment, also known as false arrest, if he or she effectuates an arrest without probable cause. *Earles v. Perkins*, 788 N.E.2d 1260 (Ind. Ct. App. 2003). For the reasons stated in Section A *supra*, Sgt. Rivera's arrest of Plaintiff was lawful and effectuated with probable cause. Therefore, Plaintiff's claim for false arrest/false imprisonment against Sgt. Rivera and Butler University fails as a matter of law.

([Filing No. 51 at 11](#)).

Oliverio's response consists of a footnote which states,

> Because the probable cause determination must be made by a jury, Oliverio's state law claims of false arrest and false imprisonment also must be submitted to the jury. *Fitzpatrick*, 2009 U.S. Dist. LEXIS 22483 at *14 (Fitzpatrick alleges Indiana state law claims of false arrest and false imprisonment. The Court will address these federal and state claims together since the analysis is essentially the same.") (citations omitted).

([Filing No. 62 at 11](#)–12, n.2).

Based on the Court's discussion above regarding probable cause, the Court determines that summary judgment is warranted on this state law claim.

**2.      Battery Claim**

The Defendants explain that a police officer is permitted to use reasonable force to effectuate an arrest, citing Indiana Code § 35-41-3-3(b). They then point to Oliverio's Complaint to show the basis for the battery claim. "Defendants committed a battery upon the Plaintiff when

they forced him to be handcuffed, by grabbing his arms as they escorted him to the police station and as they physically loaded him into the paddy wagon to be transported to the Marion County Processing Center and then to the Marion County Jail." (Filing No. 1-2 at 6, ¶20.)

Based on these facts, the Defendants assert that Officer Rivera's actions do not rise to the level of battery. Officer Rivera's "negligible physical contact" with Oliverio was reasonable and not excessive. They assert that common sense dictates that a police officer will come into some minimum level of contact with a person when they are arrested. Officer Rivera's minimal contact of placing handcuffs on Oliverio and guiding him to the police vehicle were routine and reasonably necessary. The Defendants point out that Oliverio's own testimony acknowledges that Officer Rivera was not physically rough (Filing No. 52-1 at 16–17). Because of this, the Defendants explain, Oliverio's state law battery claim fails as a matter of law.

Oliverio failed to respond to the Defendants' argument regarding the state law battery claim. Because the law allows a police officer to use reasonable force to effectuate an arrest and the designated evidence indicates that no excessive force was used and Oliverio acknowledged that Officer Rivera was not physically rough, the Court determines that summary judgment is appropriate on the state law claim for battery against Officer Rivera and Butler University. Therefore, the Defendants' Motion for Summary Judgment is granted as to the battery claim.

### 3.  Intentional Infliction of Emotional Distress

Finally, the Defendants assert that to survive summary judgment on the intentional infliction of emotional distress claim, Oliverio must present evidence that Officer Rivera "(1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress." *Vonderheide v. Green*, 2015 U.S. Dist. LEXIS 15747, at *5 (S.D. Ind. 2015). They point out that the "burden of proof is high and liability has been found only where

the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *AutoXchange.com, Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 52 (Ind. Ct. App. 2004).

Pointing to Oliverio's statement of claims, the Defendants note that Oliverio alleges Officer Rivera "committ[ed] the extreme and outrageous acts of falsely arresting him in front of his girlfriend, abusing his power, making disparaging and belittling remarks, threatening to arrest his girlfriend, and saddling Oliverio with the burden of having to clear his name with his friends, professors, girlfriend, and future parents-in-law." (Filing No. 49 at 6.) The Defendants then assert that Officer Rivera's conduct when arresting Oliverio was neither extreme nor outrageous. There is no evidence to suggest that Officer Rivera made disparaging or belittling remarks, threatened Voelker, or intended to cause Oliverio emotional harm.

In response, Oliverio argues,

Defendants' conduct here was extreme and outrageous and caused severe emotional distress. Oliverio suffered from outrageous belittling remarks from the Defendants. The officers told Oliverio's girlfriend at the scene that she should not be dating him. The officers falsely accused Oliverio of choking his girlfriend, a story they would later change to "strike." They demeaned Oliverio's character and casted doubt onto his ability to become a Navy Seal.

(Filing No. 62 at 14 (citations omitted)). Oliverio asserts that threatening to falsely arrest Voelker for public intoxication when she said that she wanted to go with Oliverio was extreme and outrageous. He argues that it is extreme and outrageous to falsely arrest an individual, and he describes the subsequent effects from the incident that caused him stress, such as the effects on his relationships and on his academics and that he had to delay his start with the Navy SEALS. Oliverio also explains that Butler University compelled him to participate in an administrative

conference with Dziwlik just before his final exams to address the incident, which affected his ability to study and perform well.

The Defendants reply that the evidence does not support any extreme or outrageous conduct on the part of Officer Rivera or Butler University. They assert that, even if Oliverio could support his allegation that Officer Rivera made disparaging and belittling remarks during the time of the arrest, such remarks are "mere insults and petty offenses," not extreme and outrageous conduct. *See Gable v. Curtis*, 673 N.E.2d 805, 810 (Ind. Ct. App. 1996); Restatement (Second) of Torts § 46 (1965). The Defendants further explain that Oliverio's argument misses the mark because he focuses on the subsequent effects and the alleged damage or harm he suffered and tries to equate that to extreme and outrageous conduct on the part of Officer Rivera and Butler University. Oliverio improperly conflates the alleged effects with the Defendants' conduct.

Upon review of the designated evidence, the Court notes that any demeaning or belittling remarks toward Oliverio came from Officer Marshall (who is not a defendant in this case), not from Officer Rivera. It was Officer Marshall who told Oliverio that he "wasn't man enough and mentally ready" for the Navy SEALS. Officer Marshall wrongfully claimed that Oliverio had choked Voelker. Officer Marshall suggested that they could arrest Voelker for public intoxication if she really wanted to go with Oliverio. The designated evidence suggests that either Officer Marshall or Officer Rivera could have made the statement, "Do you know how hard it is to get into the Navy Seals? They drop like flies. If he goes in there with an attitude like the one he showed you, he won't last." However, this statement is not belittling or demeaning and is not extreme or outrageous. In fact, Oliverio admitted that "most of this is coming from Vincent Marshall. Rivera kept his cool more." (Filing No. 63 at 14.)

While the designated evidence suggests that Oliverio suffered adverse effects from the incident, the evidence does not support the first element of an intentional infliction of emotional distress claim—that is extreme and outrageous conduct on the part of a defendant. The evidence does not show conduct by Officer Rivera or Butler University that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *AutoXchange.com*, 816 N.E.2d at 52. Therefore, the Defendants are entitled to summary judgment on this state law claim.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Filing No. 50) is **GRANTED.** Summary judgment is granted to each of the Defendants on all claims asserted by Oliverio. The Court will issue Final Judgment under separate order. The Court will allow the parties an opportunity to respond to Plaintiff's Motion for Sanctions & Motion to Compel (Filing No. 86). The Defendants' First Motion in *Limine* (Filing No. 80) and Plaintiff's Motions in *Limine* (Filing No. 85) are **DENIED as MOOT**.

**SO ORDERED.**

Date:  5/2/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Irving Marshall Pinkus
PINKUS & PINKUS
impinkus@pinkusattorneys.com

Dina M. Cox
LEWIS WAGNER LLP
dcox@lewiswagner.com

John Carl Trimble
LEWIS WAGNER LLP
jtrimble@lewiswagner.com

Laura Marie Walker
LEWIS WAGNER LLP
lwalker@lewiswagner.com